<u>NOT FOR PUBLICATION</u>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Order Filed on December 10, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| | : | |
| Talona Riviere, | : | Case No. 24-12444 (MEH) |
| | : | |
| Debtor. | : | Hon. Mark E. Hall, U.S.B.J. |
| | : | |
| | : | Hearing Date: November 4, 2025 |
| | : | |

### MEMORANDUM OPINION

Before the Court are the following: the *Motion for Summary Judgment* (the "**Motion**") filed by the landlord and creditor, Port Imperial South 8-9 Urban Renewal, LLC d/b/a Riverhouse 9 at Port Imperial (the "**Landlord**") (*See* Doc. No. 76) and the *Cross-Motion for Partial Summary Judgment* (the "**Cross-Motion**") (*See* Doc. No. 81) filed by Talona Riviere (the "**Debtor**") (the Motion and the Cross-Motion collectively, the "**Motions**"). For the reasons discussed below, the Motion is **GRANTED IN PART AND DENIED IN PART** and the Cross-Motion is **DENIED**.

**DATED: December 10, 2025**

Honorable Mark E. Hall
United States Bankruptcy Judge

The Motions emanate from the Debtor's *Motion to Hold Port Imperial South 89 Urban Renewal, LLC and Griffin Alexander, P.C. in Violation of the Automatic Stay and for Other Appropriate Relief* (the "**Stay Violation Motion**").  (*See* Doc. No. 19).  In the Stay Violation Motion, the Debtor asserts that the Landlord denied the Debtor access to her personal storage unit (the "**Storage Unit**") and to certain amenities, consisting of the gym and the pool (collectively, the "**Amenities**"), during the first thirty (30) days following the bankruptcy filing in violation of the automatic stay.

Prior to the bankruptcy filing, the state court issued a judgment of possession in favor of the Landlord.  After the bankruptcy filing, the Debtor availed herself of the protection to tenants under Section 362(l) of the Bankruptcy Code[1] by filing the necessary certification and paying one month's rent.  At the time of the bankruptcy filing, according to the Landlord, the Debtor owed $42,219.83 in rent.  (*See* POC 1-1).

In the Motion, the Landlord seeks entry of an order denying the Stay Violation Motion as to the Landlord and its counsel, Griffin Alexander P.C., vacating or annulling the automatic stay retroactively to the date of the bankruptcy filing, and requiring the Chapter 13 Trustee to continue to make payments to the Landlord in accordance with the Debtor's confirmed chapter 13 plan. (*See* Doc. No. 76-2).

In the Cross-Motion, the Debtor seeks entry of an Order finding that the Landlord and Griffin Alexander P.C. are jointly and severally liable for violating the automatic stay by denying the Debtor access to the gym and pool between March 6, 2024 and April 3, 2024 and setting a hearing date to determine the amount of damages for the stay violation.  (*See* Doc. No. 81).[2]

---

[1] All references to the Bankruptcy Code in this Opinion shall mean title 11 of the United States Code.

[2] The Debtor does not seek summary judgment related to the Debtor's allegation in the Stay Violation Motion that the Landlord denied her access to her storage unit because the Debtor acknowledges that a fact issue precludes determination of this issue at the summary judgment stage.

## I.    JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of Reference from the United States District Court for the District of New Jersey (the "**Bankruptcy Court**") dated July 23, 1984, as amended September 18, 2012, and as further amended June 6, 2025.  This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2) (A), (G) and (O).  Venue is proper under 28 U.S.C. § 1408.

In accordance with Federal Bankruptcy Rule of Procedure 7052, the following are the Court's findings of fact and conclusions of law.

## II    BACKGROUND AND PROCEDURAL HISTORY

### The Lease and State Court Eviction Proceedings

On May 2, 2023, the Debtor signed a lease (the "**Lease**") to rent an apartment from the Landlord at 900 Avenue at Port Imperial #315, Weehawken, New Jersey 07086 (the "**Premises**") for the term of May 3, 2023 to May 2, 2024.  (*See* Doc. 76-5).  The Lease states that the "Recurring Monthly Charges" are for Base Rent in the amount of $3,400.00 and $75.00 for Storage Rent.  In addition, "Non-recurring Charges" consist of a security deposit and an "$840.00 Common Area Fee" which is due again upon renewal.[3]

Fees for the Storage Unit and for the Amenities are considered "additional rent." Specifically, paragraph 4 of the Lease provides the following, in pertinent part:

> 4.    CHARGES WHICH ARE ADDITIONAL RENT: Late fees, utility charges, garage/parking fees, pet rents, common area fees, early termination charges, storage fees, bicycle storage fees, Roselink® Technology fees (if applicable), and any other rents and charges/fees due pursuant to the terms of the Lease as applicable ("Additional Rent"), are collectible as Additional Rent from the Resident:
>
>  …

---

[3] The "Common Area Fee" is also referred to as an "Amenity Fee."  See the Landlord's Proof of Claim No. 1-1, Exhibit A, which shows an "Amenity Fee for Renewal" in the amount of $840.00 due on May 2, 2023, and for which no payment was made by the Debtor.

m) Common Area Fee: You agree to pay a fee for the use, in common with other Residents, of the common areas at the Community. This fee is consideration for the use of all common areas in the Community. The Owner has the right to prohibit Resident(s) from using the common areas of the Community. Any such interruption, termination, or restriction of the Resident's use of the common areas will not result in an abatement decrease or pro-ration of the common area fee. The Owner provides services to all common areas to the Community. The common area fee shall be based upon the length of your lease term. This payment is to be paid in full upon the signing of this Lease. This common area fee is not part of your Security Deposit and is non-refundable and considered Additional Rent. We will charge an additional common area fee at the time you renew your Lease....

(Doc. No. 76-5).

Paragraph 23 of the Lease states that a tenant's "privilege to use an amenity" can be revoked if tenant fails to pay rent, defaults in any other way under the Lease, for other specific reasons, or for any reason, or for no reason whatsoever, all at the Landlord's sole discretion, with or without notice to the tenant:

23. AMENITIES: Resident understands that the Facility offers certain common area facilities, amenities, and amenity areas ("Amenity" or "Amenities"). Resident agrees that payment of the Rent and Additional Rent only entitles Resident the right to lease the Premises and the right to have ingress and egress to and from the Premises and Units; as such, the Amenities are only a privilege that may be revoked by Owner at any time with or without notice, particularly if Resident, Resident's occupants, or Resident's guests: have misused the Amenities; have disturbed the rights and comfort of others; are in default of the Lease; have failed to pay Rent, Additional Rent, or other debt when due; or for any other reason, or no reason, as determined in Owner's sole discretion. Resident acknowledges and agrees that Owner has no obligation to provide any Amenities, and Owner may temporarily or permanently remove any of the Amenities at any time without providing notice to Resident.
…
b. Revoking the Privilege to Use an Amenity: Owner may revoke Resident's privilege to use any Amenity upon Resident's default of the Lease or any Addendum thereto. Owner may revoke Resident's privilege to use any Amenity if Owner deems, in its sole discretion, that Resident, any occupant, or any guest, has misused said Amenity in any way or has disturbed the rights or comfort of others. Owner further reserves the right to revoke Resident's privilege to use any Amenity in its sole discretion, for any reason or no reason. In the event Owner revokes Resident's privilege to use an Amenity, Resident agrees that Owner has the right to remove Resident, any occupant, or any guest, from the Amenity by any legal means. Resident further agrees that:

i. Owner may bar Resident, any occupant, or any guest from entering or using any Amenity based on any misuse of same, or based upon Resident's default of the Lease or any Addendum, including but not limited to Resident's failure to pay rent or additional rent or any other debt when due, or for any other reason, or for no reason; and

ii. in the event that Owner bars Resident, any occupant, or any guest from entering or using any Amenity for any reason, or for no reason, Resident is not entitled to any rent reduction or abatement or rescission or damages of any kind whatsoever relating in any way to Resident's inability to access or use any Amenity ....

(*Id.*).

The Debtor defaulted on monthly rent payments and additional rent under the Lease and the Landlord brought an action against her (the "**Eviction Action**") in the Superior Court of New Jersey, Law Division, Special Civil Part in Hudson County, Landlord-Tenant Division (the "**State Court**"), Docket No. LT-3789-23.  (*See* Doc. No. 76-1, ¶ 2).

On January 2, 2024, the Landlord and the Debtor agreed to a settlement titled *Appendix XI-V, Settlement Agreement (Tenant remains)* which was entered in the State Court by the Honorable Susanne Lavelle, J.S.C. (the "**Settlement**").  (*See* Doc. No. 76-6).  The Settlement provided the following, in pertinent part:

- The immediate entry of a Judgment of Possession in favor of the Landlord.
- Payment of $33,302.81, which the tenant admitted was due and owing, via a payment schedule, with the first of several payments due on January 8, 2024 in the amount of $10,000.
- Payment of monthly rent in the amount of $3,475.00 each month as required by the rental agreement, during the duration of the payment plan.

(*Id.*).

The Debtor breached the Settlement less than a week later by not paying the $10,000 due on January 8, 2024, although she attempted to pay it two days after the due date.  (*See* Doc. No. 76-9).

On February 27, 2024, the Debtor filed a *Certification for Relief* with the State Court in which she requested an orderly removal and indicated that a judgment for possession had been entered against her, and she may be locked out after February 28, 2024. (*See* Doc. No. 76-7). The Debtor also stated she had $10,000 available to deposit with the State Court. (*See id.*).

A hearing was held on February 27, 2024 (the "**February 27 Hearing**") in the State Court before the Honorable Michael A. Jimenez, J.S.C. ("**Judge Jimenez**") who entered the *Order for Orderly Removal (Full Access)* (the "**February 27 Order**"). The February 27 Order stayed the execution of the Warrant of Removal until March 7, 2024, at 9:00 a.m. (*See* Doc. No. 76-8). The February 27 Order sets forth, in pertinent part, that after March 7, 2024, 9:00 a.m., the tenant "shall have no right to dwell in the subject apartment…." (*See id.*).

The following is an excerpt from the transcript of the February 27 Hearing before Judge Jimenez, with appearances by the Debtor, the Debtor's counsel, Jorge Aviles, and the Landlord's counsel, Anthony P. Farber:

> MR. AVILES:  So, Your Honor, we'd ask for an orderly removal and with full access. Apparently they have begun to deny access to certain parts of the building.
> MS. RIVIERE: Since December.
> THE COURT:  What, I mean, give me more specificity
> MS. RIVIERE: So I
> THE COURT:  So I can advise him.
> MS. RIVIERE: On my lease I have access to storage that has a lot of my work supplies and -- and other --
> THE COURT:   Storage?
> MS. RIVIERE:  Storage that is part of my lease. I have not had access to my storage since the middle of December and I'm also locked out of, um, pretty much most of the building other than my apartment so all amenities. All of that is on my lease and I wasn't supposed to be locked out. And my original agreement for the 10,000, I was two days late. I went to them to give them the payment and then they told me at that time no, instead of 10, I owed -- I need to give them the full --

> THE COURT: All right. I have no problem with the storage. I don't know about the other amenities you're talking about, especially if no rent is being paid. What other specifically to as to your property areas?
>
> MS. RIVIERE: Yeah, it's the storage. So they told me
>
> THE COURT: All right. Mr. Farber, is there any objection if I write in my order that she's to be acc—that if I grant an orderly removal here at all periods that includes the storage?
>
> MR. FARBER: Your Honor, as long as it is for the – the period of seven days, yes, I'll inform my client that that she needs to be, uh, provided access to the premises and to the --storage facil – or the storage unit that she utilizes while on the premises.
>
> THE COURT: Okay. All right. So I'm going to grant an orderly removal for March 7th, 2024 at 9 am. That's seven full days from the lockout. There will be no further extensions of this. And my order will include language that she is permitted to access the, uh, her – her unit for these -- for this period of time, including the storage unit where she has her personal belongings.

(Doc. No. 85, pp. 5-6).

On March 5, 2024, the Debtor filed another *Certification of Relief* with the State Court seeking an orderly removal in which she states, among other things, she had $19,300 to deposit with the Court that day. (*See* Doc. No. 76-9). The Honorable Susanne Lavelle, J.S.C. denied the Debtor's second request for an orderly removal in an order entered on March 5, 2025, and stated the following, in pertinent part:

> An order to deposit $19,302.70 by March 6, 2024 at 4pm will be issued. The parties may renegotiate the terms of the agreement and contact the Court to coordinate the release of the monies in escrow.

(*See* Doc. No. 76-10).

### **The Bankruptcy Filing and Communications Between Counsel**

The day before the scheduled March 7, 2024 lockout, the Debtor filed a voluntary Chapter 13 petition on March 6, 2024 (the "**Petition Date**"). On the Petition Date, the Debtor also filed Form 101A, the *Initial Statement about an Eviction Judgment Against You* ("**Form 101A**") in which she certified the following:

Under the state or other nonbankruptcy law that applies to the judgment for possession (*eviction judgment*), I have the right to stay in my residence by paying my landlord the entire delinquent amount.

I have given the bankruptcy court clerk a deposit for the rent that would be due during the 30 days after I file the Voluntary Petition for Individuals Filing for Bankruptcy (Official Form 101).

(Doc. No. 4).

Further, on the Petition Date, the Debtor filed a *Submission of Rent Deposit* indicating that she made a deposit with the Court of rent that would become due within 30 days after the Petition Date, as set forth in Form 101A. (*See* Doc. No. 5).[4] Specifically, the docket entry states:

The debtor submitted to the clerk rent due on a residential lease in the amount of $3,475.00 on March 6, 2024. The Clerk has today transmitted the check to Port Imperial South 8-9 Urban Renewal LLC, the debtor's landlord. Certification of Cure of Residential Judgment due 4/5/2024.

(*Id.*).

On March 9, 2024, the Debtor's bankruptcy counsel, Nicholas Fitzgerald, Esq. of Fitzgerald & Associates PC ("**Attorney Fitzgerald**"), sent a letter to Landlord's counsel at Griffin Alexander, P.C. ("**Griffin Alexander**") to the attention of Jennifer L. Alexander, Esq. (the "**March 9 Letter**"). (*See* Doc. No. 19-6).

In the March 9 Letter, Debtor's counsel stated, among other things, that the automatic stay was in place for 30 days, and that the Debtor did not have access to the Storage Unit or the gym. (*See id.*). Attorney Fitzgerald notified the Landlord's counsel in the March 9 Letter that "failure to provide [the Debtor] with access to the garage and to her storage area and to the gym clearly violate the bankruptcy stay contained within 11 USC 362(k)" and directed Griffin Alexander to

---

[4] The Debtor also filed the following related documents on the Petition Date: *Debtor's Certification Proving Compliance with the Provisions Continued with 11 U.S.C. §362(1) and 11 U.S.C. §362 (B)(22); Attorney's Certification Providing Compliance with the Provisions Continued within 11 U.S.C. §362(1) and 11 U.S.C. §362 (B)(22)*; and letter with copies of the foregoing documents attached. (*See* Doc. Nos. 6, 7 and 11).

advise the Landlord to provide Debtor with immediate access to the garage, storage and gym.  (*See id.*).  Attorney Fitzgerald also gave his permission for Griffin Alexander and the Landlord to contact the Debtor directly for the purpose of facilitating such access and provided the Debtor's phone number and email address.  (*See id.*).  If access was not restored by the close of business on March 11, 2024, Attorney Fitzgerald stated that the Debtor would move on shortened time to have the Landlord held in violation of the automatic stay.  (*See id.*).  As set forth *supra*, Attorney Fitzgerald filed the Stay Violation Motion on March 15, 2024.

Attorney Fitzgerald's paralegal, Nadiyah Loftin ("**Paralegal Loftin**"), submitted a certification dated March 15, 2024 (the "**Paralegal Certification**") in support of the Stay Violation Motion, noting that at Attorney Fitzgerald's direction, she emailed a copy of the March 9 Letter, on Saturday, March 9, 2024, to Griffin Alexander at the following email address landlordtenant@lawgapc.com.  (*See* Doc. No. 19-2, ¶ 3).  Paralegal Loftin certified that she telephoned Griffin Alexander on March 11, 2024 to confirm receipt of the March 9 Letter, and she spoke with Zachery Wynne, Esq. ("**Attorney Wynne**").  Paralegal Loftin certified that Attorney Wynne told her that he received the March 9 Letter and that the information in it was "'incorrect' and that his client would not provide the debtor with access to her storage area or to the gym 'until all rental arrears are paid….'" (*See id.* ¶ 4).

On March 15, 2024, the Landlord filed its proof of claim in the amount of $42,219.83 for rental arrears.  (*See* POC-1-1).  Attached to the Landlord's claim as Exhibit A is a Resident Ledger which identifies Lease-related payments made from October 20, 2021 through the Petition Date. The Resident Ledger indicates that the Amenity Fee of $840.00 was not paid with the renewal of the Lease on May 2, 2023, or at any time.

Also on March 15, 2024, the Debtor filed the Stay Violation Motion, seeking a hearing on shortened time. (*See* Doc. Nos. 19 and 20). An *Order Shortening Time* was entered on March 18, 2024, setting a hearing on the Stay Violation Motion for April 3, 2024. (*See* Doc. No. 21). The Landlord filed an objection to the Stay Violation Motion. (*See* Doc. No. 26).[5] On April 3, 2024, the Bankruptcy Court held and then continued the hearing, and on April 5, 2024, entered a Scheduling Order for a Plenary Hearing establishing a briefing schedule and setting the next hearing date for May 23, 2024. (*See* Doc. No. 34).[6]

On April 5, 2024, the Debtor's counsel filed the *Attorney's Statement Regarding Bankruptcy Stay and Other Matters* in which he states that the Debtor is unable to cure the full arrears on the Lease and therefore *"*the debtor has no right to cure her rental arrears and as of April 5, 2024, the bankruptcy stay no longer applies so as to prevent the debtor from being evicted from her rental apartment." (*See* Doc. No. 35).[7]

The Court held a status conference on May 20, 2024, and on June 5, 2024, the Court entered a *Mediation Order* appointing Thomas M. North as the mediator. (*See* Doc. No. 44).[8] The

---

[5] The Debtor and the Landlord filed responses prior to the April 3, 2024 hearing. (*See* Doc. Nos. 26, 29, 31, 32 and 33).

[6] The Debtor and the Landlord filed supplemental documents. (*See* Doc. Nos. 38, 39).

[7] Attorney Wynne submitted a *Statement of Facts in Support of Summary Judgment in Favor of Creditor* in which he certifies as to certain facts (the "**Wynne Statement of Facts**"). (*See* Doc. No. 76-1). There is no certification from the Landlord. The precise date that the Debtor vacated the premises is not referenced in the Debtor's Certification (*See* Doc. 19-1) or the Wynne Statement of Facts.

[8] On June 7, 2024, the Debtor filed a Modified Chapter 13 Plan, which provides for payment of $40,581.36 to the Landlord through the Plan. (*See* Doc. No. 48). This Plan was confirmed on August 9, 2024. (*See* Doc. No. 57).

mediation was not successful, as set forth in the *Mediation Report* filed nearly a year later, on June 3, 2025. (*See* Doc. No. 72).[9]

Before the Mediation Report was filed, on March 11, 2025, the Debtor submitted the following certifications regarding alleged costs incurred: *Attorney's Certification regarding Time Debtor Spent in Counsel's Office Regarding Stay Violation Motion* and *Attorney's Supplemental Certification regarding Legal Time and Costs in Regards to Stay Relief Motion*. (*See* Doc. Nos. 64, 65).

On June 3, 2025, the Court conducted a status conference at which appearances were made by counsel for the Landlord and the Debtor.[10]  Following the status conference, the parties consented to a revised *Joint Order Scheduling Pre-trial Procedures and Trial* (the "**Revised Scheduling Order**").  (*See* Doc. No. 73).  The Motions were filed pursuant to the Revised Scheduling Order.  The Motions incorporate by reference the parties' respective prior filings related to the Stay Violation Motion – specifically, Doc. Nos. 19, 26, 29, 31, 32, 33, 38 and 39.

On November 4, 2025, the Court heard argument on the Motions.  At that hearing, the Court directed counsel for the Debtor to file a copy of the February 27 Hearing transcript by November 14, 2025, with the Landlord's response, if any, due by November 21, 2025.  On November 4, 2025, the Debtor filed a copy of the February 27 Hearing transcript with an accompanying attorney certification.  (*See* Doc. No. 85).

---

[9] The *Order Confirming Plan* confirming the Debtor's Chapter 13 Plan provides that "the claim of Port Imperial South 8-9 Urban Renewal shall be paid through the plan as filed, unless otherwise ordered by the Court." (*See* Doc. No. 57, p. 2).

[10] This case was originally assigned to the Honorable Rosemary Gambardella (Ret.) and on May 5, 2025 was transferred to the Honorable Mark E. Hall following Judge Gambardella's retirement.

III      **ANALYSIS**

**Standard for Summary Judgment**

Federal Rule of Civil Procedure 56(a), made applicable to this proceeding by Federal Rule

of Bankruptcy Procedure 7056, provides that a "court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. The focus of the analysis is

"whether there is the need for a trial—whether, in other words, there are any genuine factual issues

that properly can be resolved only by a finder of fact because they may reasonably be resolved in

favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511,

91 L. Ed. 2d 202 (1986).

Courts have found that a "fact is material when its resolution 'might affect the outcome of

the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party.'" *Justofin v. Metro.*

*Life Ins. Co.,* 372 F.3d 517, 521 (3d Cir. 2004), *as amended* (Aug. 12, 2004) (quoting *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

The party seeking summary judgment has the initial responsibility of demonstrating "the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.

Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Then, "the nonmovant must present evidence establishing

that a genuine issue of material fact exists, making it necessary to resolve the difference at trial."

*Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003). Inferences drawn from the underlying

facts should be viewed in the light most favorable to the non-moving party. *See Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538

(1986); *see also Sempier v. Johnson & Higgins*, 45 F.3d 724, 727 (3d Cir. 1995) ("In reviewing the record, the court must give the nonmoving party the benefit of all reasonable inferences.").

However, a party opposing a summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The opposing party cannot just rely on allegations but must present evidence raising a genuine issue for trial. *See Anderson*, 477 U.S. at 249. Thus, "only disputes over those facts 'that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Dehart v. Horn*, 390 F.3d 262, 267 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 248). Therefore, "[s]ummary judgment may be proper even when material facts remain disputed, if, after all inferences are drawn in favor of the non-moving party, the moving party is entitled to judgment as a matter of law" when the opposing party "has failed to satisfy the burden of proof of adequately demonstrating an essential element of his or her case." *In re NorVergence, Inc.*, 384 B.R. 315, 370 (Bankr. D.N.J. 2008) (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804, 806).

However, "[a]lternatively, a court must deny a summary judgment when a genuine issue of material fact remains to be tried, or when the moving party is not entitled to a judgment as a matter of law." *In re NorVergence, Inc.*, 384 B.R. 315, 370 (Bankr. D.N.J. 2008). Courts have recognized that granting "[s]ummary judgment is a "drastic remedy" which is not to be granted liberally" and "[s]ome courts have held that whenever there is even the "slightest doubt" regarding the facts of a case, summary judgment may not be granted. *In re Peller*, 184 B.R. 663, 666 (Bankr. D.N.J. 1994) (citing *Tomalewski v. State Farm Life Ins. Co.*, 494 F.2d 882, 884 (3d Cir. 1974)).

**Standard for Violations of the Automatic Stay under 11 U.S.C. § 362(k)**

Section 362(k) of the Bankruptcy Code provides, in relevant part, that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). Although the term "willful" is not defined in the statute, courts have determined that:

> A 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded.

*In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990) (quoting *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989)).

However, the Third Circuit Court of Appeals has recognized a limited exception to a finding of a "willful violation" when a creditor has acted in good faith that there was no stay violation and has persuasive legal authority to support such position. *See Univ. Med. Ctr. v. Sullivan* (*In re Univ. Med. Ctr.*), 973 F.2d 1065, 1088 (3d Cir. 1992); s*ee also In re Aleckna*, 13 F.4th 337, 344 (3d Cir. 2021) ("[W]e continue to read *University Medical* as establishing a 'willfulness' defense that is separate and distinct from one of good faith alone.")

The automatic stay has broad application and "[t]his breadth suggests Congressional intent that, in the face of uncertainty or ambiguity, courts should presume protection of arguable property." *In re Chesnut*, 422 F.3d 298, 303 (5th Cir. 2005). "[A] creditor cannot seize property that is arguably part of the estate, and then defend its actions by stating it believes the debtor does not have any interest in it, regardless of what the final determination on ownership of the property

is." *In re Manley Toys Ltd.,* No. 16-15374 (JNP), 2018 WL 1033426, at *4 (Bankr. D.N.J. Feb.

14, 2018), *aff'd,* No. CV 18-11465 (RMB), 2019 WL 3229301 (D.N.J. July 18, 2019).

When a debtor can demonstrate a willful violation of the stay has occurred, "compensatory

damages are mandatory." *In re Thors*, No. ADV 10-1078, 2012 WL 1658286, at *2 (Bankr. D.N.J.

May 11, 2012) (citing *Matter of Mullarkey,* 81 B.R. 280, 284 (Bankr. D.N.J. 1987)).   However,

"§362(k) requires a finding of actual injury" and thus, "the general rule of law is that absent some

out-of-pocket injury or some extreme and on-going misconduct by the creditor, fees and costs will

not be allowed." *In re Thors*, No. ADV 10-1078, 2012 WL 1658286, at *2 (Bankr. D.N.J. May

11, 2012).   Additionally, "courts have overwhelmingly held that debtors have an obligation to

attempt to mitigate damages prior to seeking court intervention."  *Id.*

### The Automatic Stay Was in Effect for 30 Days Following the Petition Date

Section 362(b) of the Bankruptcy Code provides, in relevant part, that the "[t]he filing of

a petition under section 301, 302, or 303 of this title, … does not operate as a stay--

> (22) subject to subsection (l), under subsection (a)(3), of the continuation of any
> eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor
> involving residential property in which the debtor resides as a tenant under a lease
> or rental agreement and with respect to which the lessor has obtained before the
> date of the filing of the bankruptcy petition, a judgment for possession of such
> property against the debtor;

11 U.S.C. § 362(b)(22). However, there is an exception that provides a tenant with protection

under limited circumstances:

> [T]here is a safe harbor, section 362(l), which provides that the stay exception under
> section 362(b)(22) will not apply until 30 days after the petition date if the debtor
> files with the petition and serves an Initial Statement About an Eviction Judgment
> Against You (Form 101A) (the "Eviction Statement").  See 11 U.S.C. § 362(l)(1).
> The Eviction Statement "contains the necessary certification and negates the effect
> of section 362(b)(22), at least for a period of 30 days, and the pending eviction is
> automatically stayed....  The automatic stay may remain in force after the 30-day
> period if the debtor files a further certification that the entire monetary default that

gave rise to the eviction judgment for possession has been cured. 11 U.S.C. § 362(l)(2)."

*In re Chester*, No. 24-22644-ABA, 2025 WL 2816599, at 4 (Bankr. D.N.J. Oct. 2, 2025).

But a lessor is not without recourse. If there is disagreement with the debtor's certification in Form101A, the Bankruptcy Code provides a process to object. Under Section 362(l)(3)(A) of the Bankruptcy Code, "[i]f the lessor files an objection to any certification filed by the debtor under paragraph (1) or (2), and serves such objection upon the debtor, the court shall hold a hearing within 10 days after the filing and service of such objection to determine if the certification filed by the debtor under paragraph (1) or (2) is true." 11 U.S.C. § 362(l)(3)(A). If the court upholds the objection, then "subsection (b)(22) shall apply immediately and relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property[.]" 11 U.S.C. § 362(l)(3)(B).

Here, the Landlord argues that the Debtor did not truthfully complete Form 101(A) because under state or other non-bankruptcy law, the Debtor no longer had a right to cure the entire delinquent amount. (*See* Doc. No. 76-2, pp. 5-6). The Landlord asserts that because "the Debtor could not truthfully obtain the automatic stay under 11 U.S.C. § 362(a)(3)" there was no automatic stay in place for the Landlord to have violated. (*Id*. at pp. 6-7).[11]

---

[11]    The Landlord argues that under New Jersey law a tenant can cure past due rent up to 3 days after a lockout when the lockout results from unpaid rent (rather than from another type of default). (*See* Doc. No. 76-2, p. 6) (citing N.J.S.A. § 2A:42-10.16a). However, the Landlord asserts that the 3-day grace period allowing cure following a lockout does not apply when a tenant has breached a settlement agreement, which the Landlord asserts the Debtor has done here. The Landlord argues that the judgment for possession and warrant of removal were based on the breach of the settlement agreement which "supersedes the underlying non-payment of rent eviction" and renders 11 U.S.C. § 362(l) inapplicable. (*See* Doc. No. 76-2, p. 6). The Landlord states that a request for an orderly removal under N.J. Ct. R. 6:6-6(b), which the Debtor requested and received, only permits a tenant to remain in a property for up to 7 additional days, after which time a tenant remaining on the premises may be deemed a trespasser. (*See* Doc. No. 76-2, p. 6).

There is at least one unpublished case that arguably supports the Landlord's view. *See 806 6th St. HCPVI, LLC v. Nunez*, No. A-0753-21, 2023 WL 5425617, at *6 (N.J. Super. Ct. App. Div. Aug. 23, 2023),

In opposition, the Debtor asserts that Form 101A was truthfully completed, but, even if it was not, the Landlord did not file an objection challenging the Debtor's certification and is now precluded from using the alleged inaccuracy of Form 101A as a defense.  (*See* Doc. No. 80, p. 10).

It is undisputed that the Landlord did not timely object to Form 101A.  At least one court found that: "[b]ecause the Landlord had not availed himself of the § 362(l)(3) procedure to object to the Debtor's certifications under § 362(l)(1), the Landlord was bound by the legal effect of the Debtor's certifications in Official Form 101A." *In re Shrum*, 597 B.R. 845, 854 (Bankr. E.D. Mich. 2019).  The Court is persuaded by the rationale of *Shrum* and agrees with the Debtor that the Landlord is bound by the legal effect of the Debtor's filing of the Form 101A certification and the concomitant payment of one month's rent in the amount of $3,475.00 (which includes base rent plus a $75.00 storage fee).  As a result, the Court finds that the Debtor's compliance with the requirements of Section 362(l), coupled with the Landlord's failure to timely object, results in the imposition of the automatic stay for thirty days post-petition (the "**30-Day Stay**").[12]

### The Court will Not Retroactively Vacate or Annul the Automatic Stay

The Landlord asks this Court to vacate or annul the automatic stay retroactively to the Petition Date and thereby validate any action taken by the Landlord in violation of the stay.  The basis for the Landlord's request is the Debtor's alleged bad faith.  The Landlord asserts that the

---

cert. denied, 256 N.J. 192, 307 A.3d 534 (2024) (rejecting the tenant's argument that N.J.S.A. § 2A:42-10.16a (referred to as the "Stack Amendment") should apply to a consent order because the eviction proceeding was commenced due to non-payment of rent, because then "landlords seeking to regain possession of their properties would be wholly disincentivized to enter consent judgments, as such judgments would be accompanied by the risk that tenants could ultimately remain in possession by tendering their outstanding rental obligations at the last second and contrary to the terms of those negotiated, court approved agreements.").

[12] Because the Landlord did not properly avail itself of the procedures under Section 363(l)(3), the Court need not reach a decision on the truth of Form 101A and the Landlord's argument that the Debtor did not have a right under state or non-bankruptcy law to cure the full arrears.

Debtor filed the petition in bad faith due to the timing of the filing on the eve of being locked out of the Premises, the scheduling of claims consisting of dormant gambling debts, and an email to the Landlord's counsel from the Debtor's counsel in the Eviction Action indicating that the Debtor had no choice but to file for bankruptcy when the Landlord did not accept the prepetition offer to pay a portion of the rental arrears.[13] (*See* Doc. No. 76-2, pp. 7-8; Doc. No. 76-12).

The Debtor agrees that a chapter 13 petition can be dismissed if bad faith is proven on a motion to dismiss but notes, among other things, that in this case, the Landlord has not filed a motion to dismiss, and the Debtor has a confirmed chapter 13 plan in an active bankruptcy "which belies the landlord's assertion of bad faith." (*See* Doc. No. 80, p. 14).

The decision whether to annul the automatic stay is "committed to the bankruptcy court's discretion, and may be reversed only for abuse of that discretion." *In re Myers*, 491 F.3d 120, 128 (3d Cir. 2007). In certain circumstances, such as when a bankruptcy petition is filed in bad faith, the bankruptcy court may retroactively annul the automatic stay and thereby validate a stay violation. *Id.; see also In re Potter*, No. 23-2480, 2024 WL 3177775, at *3 (3d Cir. June 26, 2024) ("We have repeatedly recognized that § 362(d) authorizes retroactive annulment of an automatic stay and ratification of acts taken in violation of the stay."). But annulment of the stay "is only appropriate in the rarest of circumstances." *In re Siciliano*, 167 B.R. 999, 1007 (Bankr. E.D. Pa.

---

[13] Exhibit H is an email dated March 6, 2024, from Roberta Tarkan, Esq. of The Law Offices of Roberta L. Tarkan, Esq. to GALEXANDER@LAWGAPC.COM which states the following:

Bankruptcy stay
Your client was very fooling not to agree to a new modified agreement that would have put all the money in its pocket Very greedy owner.
Horrible really to not work with this lady who wanted to pay all the rent and has $19,000 + to put into court just not all per the agreement.
You left her with no choice but to file for bankruptcy.

(Doc. No. 76-12).

1994).  Further, "many courts will annul the stay only if the debtor is guilty of some inequitable conduct, such as abusive and/or repetitive bankruptcy filings." *Id.* at 1008 (citing various cases); *In re Kim*, No. 02-20654 (GMB), 2008 WL 442120, at *6 (Bankr. D.N.J. Feb. 14, 2008).

The Debtor filed her bankruptcy petition on the eve of being locked out of the Premises under orders issued by the State Court.  However, as the Landlord admits, this is the Debtor's first bankruptcy filing and, as the Debtor argues, she has a confirmed chapter 13 plan in good standing and the plan proposes to pay the Landlord's claim in full.  Further, the Court notes that seven proofs of claim were filed in this case in addition to the Landlord's claim with a total of $151,378.88 of debt (*See generally* Claims Register).  Thus, the Court finds based on the record before it that the Landlord has not met its burden of showing the bankruptcy filing was in bad faith or that the Debtor has engaged in inequitable conduct such that the automatic stay should be retroactively annulled to the Petition Date.

To the extent that the Landlord alternatively seeks "limited stay relief" *nunc pro tunc* to the Petition Date as set forth in its proposed order, such stay relief is also denied.

Notwithstanding the imposition of the 30-Day Stay, the Debtor must next prove that she was injured by the Landlord's willful violation of the stay under Section 362(k) of the Bankruptcy Code.

### Continued Denial of Access to Amenities Did Not Violate the Automatic Stay

It is undisputed that during the 30-Day Stay the Landlord denied the Debtor access to the Amenities.  The Landlord argues that access to amenities is not a part of a tenant's base leasehold and that tenants have a right to use them only if they are in good standing and pay the amenity fee, as set forth in the Lease, and access to the amenities has not been revoked by the Landlord.  (*See* Doc. No. 76-2, p. 9) (citing Doc. No. 76-5, at ¶¶ 4(m) and 23)).

It is axiomatic that a bankruptcy filing cannot be used to expand a debtor's rights beyond what existed as of the Petition Date: "[s]ubject to a few specifically enumerated exceptions, the bankruptcy estate contains only the interests of the *debtor* in property as of the time of the bankruptcy filing, 'no more, no less.'" *In re Cybergenics Corp.*, 226 F.3d 237, 247 n. 16 (3d Cir. 2000); *In re Pursuit Cap. Mgmt., LLC*, 595 B.R. 631, 657 (Bankr. D. Del. 2018) ("The Court recognized [in *Cybergenics*] that, with a few exceptions, property of the estate contains only a debtor's interest in property as of the bankruptcy filing."); *In re Arrow Mill Dev. Corp.*, 185 B.R. 190, 193–94 (Bankr. D.N.J. 1995) (citing *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir.1984) ("[w]hatever rights a debtor had at the commencement of the case continue into bankruptcy—no more, no less."). Here, whatever right the Debtor had to use the Amenities was terminated by the Landlord more than two months prior to the Petition Date pursuant to the clear and unambiguous terms of the Lease.

The Lease permitted revocation of a tenant's privilege to use amenities, in the Landlord's sole discretion, for a monetary default as well as for any reason, or no reason at all. (*See* Doc. 76-5, at ¶ 23)).[14] In December of 2023, the Debtor lost access to the Amenities, as the Debtor admitted during the February 27 Hearing before Judge Jimenez, based on the Debtor's non-payment of the base rent and the Amenity Fee. (*See* Doc. No. 85, p.5). Further, Judge Jimenez declined to restore the Debtor's access to the Amenities at the February 27 Hearing. (*See id.*).[15]

---

[14] The Debtor has not provided any support evidencing that the Landlord denying her access to the Amenities prior to the Petition Date was contrary to applicable law or the terms of the Lease.

[15] The Debtor argues that the Landlord was orally ordered by Judge Jimenez in the Eviction Action to restore the Debtor's access to the storage area and to the gym. However, the transcript of the February 27 Hearing clearly evidences that while Judge Jimenez ordered that the Debtor should have access to the storage unit for seven days, Judge Jimenez did not order that she was entitled to access to any amenities, including the gym and the pool. (*See id.*, p. 6).

In addition, when the Debtor submitted payment of one month's rent to the Clerk of the Bankruptcy Court pursuant to Section 362(l) of the Bankruptcy Code, she paid $3,475.00 which included base rent and a $75.00 storage fee. This payment did not include any portion of the Amenity Fee, which was $840.00 annually (or $70.00 per month). Further, the Resident Ledger attached to the Landlord's Proof of Claim 1-1, as Exhibit A, evidences that the Debtor failed to pay the Amenity Fee on May 2, 2023 or at any time thereafter. (*See* POC 1-1). Finally, the Debtor does not even claim that she paid the Amenity Fee or any portion thereof. Therefore, the record is clear that the Debtor did not have access to the Amenities as of the Petition Date. Further, the Debtor's bankruptcy filing did not restore the Debtor's access to the Amenities because, except in limited circumstances not relevant here, such filing cannot expand a debtor's rights beyond what existed as of the Petition Date. For these reasons, the Court finds that the Landlord's denial of the Debtor's access to the gym and pool subsequent to the Petition Date did not violate the stay.[16]

---

[16] Additionally, the parties spent considerable time arguing the applicability of the United States Supreme Court's decision in *City of Chicago, Illinois v. Fulton*, 592 U.S. 154 (2021). In *Fulton*, the Supreme Court addressed whether the City of Chicago violated the automatic stay by retaining possession of debtors' vehicles which the city impounded prepetition for unpaid fines. The Supreme Court found that:

> Though the parties debate the issue at some length, we need not decide how the turnover obligation in § 542 operates. Nor do we settle the meaning of other subsections of § 362(a). We hold only that mere retention of estate property after the filing of a bankruptcy petition does not violate § 362(a)(3) of the Bankruptcy Code.

*City of Chicago, Illinois v. Fulton*, 592 U.S. at 161–62.

The Landlord argues that the application of *Fulton* necessarily means that the parties' prepetition status vis-à-vis one another should be maintained post-petition. In contrast, the Debtor asserts that *Fulton* is inapplicable because it only applies to violations under Section 362(a)(3) of the Bankruptcy Code and the Debtor argues that the Landlord violated other subsections of Section 362(a). Because the Court finds that the Debtor's right to access the Amenities terminated prior to the Petition Date, it is not necessary to address the application of the holding in *Fulton* to this case.

## Access to the Storage Unit Issue not Ripe for Adjudication

The facts regarding the Debtor's access to the Storage Unit are distinguishable from the facts regarding the Debtor's access to the Amenities.  At the February 27 Hearing, Judge Jimenez ordered that the Debtor be permitted access to the Storage Unit "where she has her personal belongings." (*See* Doc. No. 85, p. 6).  Additionally, it is undisputed that the Debtor made a post-petition payment for the Storage Unit when she submitted the $3,475.00 check to the Clerk of the Bankruptcy Court, which included the base monthly rent of $3,400 and a $75.00 monthly fee for the Storage Unit.  Further, the Debtor certified that she needed access to the Storage Unit because it contained her "personal possessions." (*See* Doc. No. 19-1, ¶ 10).

Therefore, if the Landlord willfully denied the Debtor access to the Storage Unit during the 30-Day Stay, there could be a violation under Bankruptcy Code Section 362(k).  This question presents an issue of material fact.  The Landlord asserts in the Wynne Statement of Facts that the "Debtor remained in possession of the storage unit throughout the proceedings." (*See* Doc. No. 76-1, p. 4).  The Landlord also argues that the Debtor failed to advise the Landlord she believed she was locked out of the Storage Unit. (*See* Doc. No. 76-2, p. 12).  The Landlord further suggests that if the Debtor could not enter the Storage Unit, it may have been caused by misfunctioning technology:

> Landlord uses a form of electronic key which permits its tenants to utilize approved entryways, amenities and all other various doors on the property. While this system is not without flaws, it is considered fairly cutting-edge in regard to security within the building.
>
> As evidenced by the key card access Debtor maintained during the bankruptcy, Debtor always had access to the storage unit. Such access is reflected in the image of the key access as Exhibit I.
>
> While admittedly, this system is known to malfunction from time to time, the Landlord was never put on notice of the Debtor's inability to access her storage unit, an approved access point before Debtor filed this motion to hold Landlord in

violation of the automatic stay based upon a failure to access the storage unit.

*Id.* [17]

In stark contrast, the Debtor certifies that despite her repeated post-petition requests, she was denied access to the Storage Unit. (*See* Doc. No. 81-1, p. 6; Doc. No. 19-1, ¶¶ 7-10). The Debtor's counsel notified the Landlord's counsel that the Debtor did not have access to the Storage Unit through the March 9 Letter emailed to Griffin Alexander and the March 11, 2024 phone call by Attorney Fitzgerald's paralegal to Attorney Wynne. The Stay Violation Motion was filed on March 15, 2024, in part due to the Debtor's inability to access the Storage Unit.

Because there is a genuine dispute as to material facts as it relates to the Debtor's post-petition access to the Storage Unit, the Landlord's request for summary judgment is denied as to whether there was a willful stay violation regarding the Debtor's ability to access the Storage Unit. The issues to be determined at a plenary hearing include whether the Landlord denied the Debtor access to the Storage Unit during the 30-Day Stay and, if so, whether such denial amounted to a willful violation of the automatic stay, rather than a miscommunication, technological malfunction, or other similar reason. The Court leaves the parties to their proofs at the plenary hearing on these issues.

Additionally, the Court acknowledges that the only allegation by the Debtor involving Griffin Alexander is the March 11, 2024 statement purportedly made by Attorney Wynne to Paralegal Loftin in which Attorney Wynne allegedly said that the Debtor would not gain access to the Storage Unit and the Amenities unless the rental arrears were paid in full. Although the Court is somewhat skeptical whether such statement by itself made to a paraprofessional, and not the Debtor directly, is grounds for finding a stay violation for which Griffin Alexander would be

---

[17] The Court notes that these factual statements in support of the Landlord's arguments are referenced only in the Landlord's brief and not in a separately filed certification.

jointly and severally liable, it is premature to excise Griffin Alexander from liability at this time since the Court may find that the Landlord violated the 30-Day Stay as it relates to access to the Storage Unit. The Court leaves the parties to their proofs at the plenary hearing on this issue.

Finally, to the extent that the Landlord's initial request for the Court to enter an order requiring the Chapter 13 Trustee to continue making payments to the Landlord in accordance with the Debtor's confirmed chapter 13 plan is still being pursued by the Landlord, such request is denied without prejudice as moot.

## IV    CONCLUSION

For the above reasons, the Motion is granted in part and denied in part. The Debtor's allegation that the Landlord and Griffin Alexander violated the automatic stay by denying the Debtor access to use of the gym and the pool (i.e. the Amenities) is denied with prejudice. Summary judgment on this issue is granted in favor of the Landlord, and therefore, the Stay Violation Motion is denied with prejudice as to the Amenities. The remainder of the Motion is denied without prejudice.

For the above reasons, the Cross-Motion is denied with prejudice.

An Order will be entered consistent with this Opinion and the Court will schedule a plenary hearing related to whether the Debtor was denied access to the Storage Unit during the 30-Day Stay and, if so, whether such denial amounted to a willful violation of the automatic stay under Section 362(k) of the Bankruptcy Code.